**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**VANBUREN HICKS**                                                                          **PLAINTIFF**

**v.**                               **Case No. 4:12-cv-594-KGB**

**CITY OF FORREST CITY, MAYOR LARRY**
**BRYANT, individually and in his official capacity**
**as MAYOR OF FORREST CITY, LT. DWIGHT**
**DUKES, individually and in his official capacity as**
**DIRECTOR OF THE CITY OF FORREST CITY**
**ANIMAL CONTROL DIVISION COUNTY OF ST.**
**FRANCIS, SHERIFF BOBBY MAY, individually and**
**in his official capacity as SHERIFF OF ST. FRANCIS**
**COUNTY**                                                                                   **DEFENDANTS**

## OPINION AND ORDER

Plaintiff Vanburen Hicks files this action based on events that occurred on May 11, 2012, while he was an inmate at the St. Francis County Detention Center working under a work-release program with the Forrest City Animal Control Division.  Mr. Hicks alleges claims under 42 U.S.C. §§ 1983 and 1985 against defendants for allegedly violating his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution based on his being shot by a tranquilizer gun that discharged after falling from the seat of the city-owned vehicle in which Mr. Hicks was riding.

Before the Court is the motion for summary judgment filed by separate defendants St. Francis County and Sheriff Bobby May (together, "County Defendants") (Dkt. No. 26).  Mr. Hicks has responded (Dkt. No. 42), and County Defendants have replied (Dkt. No. 53).  Also before the Court is the motion for summary judgment filed by separate defendants City of Forrest City, Arkansas; Larry Bryant, individually and in his official capacity as Mayor of Forrest City; and Lieutenant Dwight Duch (incorrectly sued as Dwight "Dukes"), individually

and in his official capacity as the former Director of the Forrest City Animal Control Division (together, "City Defendants") (Dkt. No. 29). Mr. Hicks has responded (Dkt. No. 39), and City Defendants have replied (Dkt. No. 44). For the following reasons, defendants' motions for summary judgment are granted (Dkt. Nos. 26, 29).

Also before the Court is County Defendants' motion to dismiss (Dkt. No. 5). Mr. Hicks failed to respond to the motion. County Defendants' motion is moot in view of the grant of summary judgment in their favor.

## I.      Factual Background

On April 26, 2012, Mr. Hicks was committed to the custody of the St. Francis County Detention Center and was to be imprisoned there until the fines that had been assessed against him by the St. Francis County District Court were paid.[1] According to the testimony of Jonnie Jones, the Lieutenant Jail Administrator at the St. Francis County Jail, an individual's fines are reduced by $40.00 for each day the individual is incarcerated at the St. Francis County Jail (Dkt. No. 31, ¶ 3; Dkt. No. 29-14, at 2). However, inmates at the St. Francis County Jail may volunteer to participate in the "Trustee program" to work off their fines at a rate of $75.00 per day, allowing the inmates to be released from custody more quickly (Dkt. No. 28, ¶ 5; Dkt. No. 31, ¶ 4-6; Dkt. No. 29-14, at 2). On or about May 1, 2012, Mr. Hicks volunteered to work in the trustee program and began working with Forrest City Animal Control (Dkt. No. 29-1, at 3; Dkt. No. 29-2).

The Forrest City Animal Control's "Trustee Instructions" state that trustees assigned to assist Forrest City Animal Control are not employees of the City and must be supervised by an

---

[1] The St. Francis County Detention Center houses prisoners of St. Francis County and Forrest City. The St. Francis County Sheriff's Department is responsible for operating the St. Francis County Jail, and Forrest City pays St. Francis County to house its prisoners (Dkt. No. 28, ¶ 2; Dkt. No. 28-2, at 5).

Animal Control Officer ("ACO") at all times (Dkt. No. 29-5).  The Trustee Instructions state that trustees will not be left at the Forrest City Animal Shelter unsupervised at any time.  If the ACO supervising the trustees leaves, the trustees must go with the ACO in the vehicle, unless a situation presents itself where the trustees cannot go with the ACO, in which case the ACO is to drop the trustees off at the police department (Dkt. No. 29-5).  The Trustee Instructions state that trustees "are not to be used as dog catchers in the field" and "shall not handle a dog / animal being captured in the field" (Dkt. No. 29-5).

Mr. Hicks worked with Forrest City Animal Control from May 1, 2012, until the incident on May 11, 2012.  He was picked up each morning by Claude Gaines or Jarrell Williams, who were Forrest City ACOs at the time, and was returned to the jail later that day (Dkt. No. 29-1, at 3).  The trustees' primary responsibilities were cleaning duties at the Forrest City Animal Shelter, which was shared with the Forrest City Humane Society (Dkt. No. 45, at 62-64, 85-86).  However, trustees would also accompany ACOs in the field due to the policy that trustees were not to be left unattended or unsupervised (Dkt. No. 45, at 64).

Upon being released to Mr. Gaines on May 1, 2012, Mr. Hicks was taken to the Forrest City Animal Shelter where he was given a "Community Service Worksheet" to complete and sign (Dkt. No. 29-1, at 12; Dkt. No. 29-2).  The worksheet included terms of understanding and consent, including the statement, "I release the City of Forrest City, St. Francis County, the State of Arkansas, and all officers of the City of Forrest City, the Judge, and supervisors of the Community Service from liability for any injury which might be incurred during my volunteer placement, regardless of the nature of the injury" (Dkt. No. 29-2).  Mr. Hicks testified that he read this paragraph before signing the worksheet but said that he had no idea the release applied to faulty equipment (Dkt. No. 29-1, at 4).

Mr. Hicks was picked up by Mr. Williams on May 11, 2012, and taken to the animal shelter, where he released dogs, cleaned their cells, and gave them food and water (Dkt. No. 29-1, at 4-5).  That afternoon, Mr. Williams received a call about a vicious dog.  Mr. Williams took Mr. Hicks and two other trustees with him to respond to the call, and the tranquilizer pistol was loaded in preparation to capture the dog.  Mr. Williams, Mr. Hicks, and the trustees did not locate the dog, and Mr. Williams, Mr. Hicks, and the two other trustees proceeded to a local veterinarian's office (Dkt. No. 29-1, at 4; Dkt. No. 29-7).  Mr. Williams was in the driver's seat, and Mr. Hicks was in the front passenger seat of the truck.  Mr. Williams placed the loaded tranquilizer pistol in the seat of the truck.  Approaching a red light, Mr. Williams applied the truck's brakes, and the tranquilizer pistol fell off of the seat, landed on the floorboard, and discharged into Mr. Hicks's right ankle (Dkt. No. 29-1, at 4; Dkt. No. 29-7).

Following the incident, Mr. Williams took Mr. Hicks to a veterinarian's office to inquire whether there was an "antidote" for the tranquilizer.  The veterinarian instructed Mr. Williams to take Mr. Hicks to the emergency room (Dkt. No. 29-1, at 5; Dkt. No. 29-7).  Mr. Williams took Mr. Hicks to the Forrest City Medical Center, where Mr. Hicks was admitted for observation until the effects of the tranquilizer wore off (Dkt. No. 29-1, at 6; Dkt. Nos. 29-7, 29-13).  Mr. Hicks was discharged the following day, May 12, 2012.  He testified that the physician he spoke to told him that there should not be any side effects other than the possibility that he would be "woozy" for another 24 hours or so (Dkt. No. 29-1, at 6).  Mr. Hicks's medical bills were paid by insurance the Forrest City Police Department carried on him while he was working as a trustee (Dkt. No. 29-1, at 8; Dkt. No. 29-12).  Mr. Gaines informed Mr. Hicks prior to his discharge that the remainder of his fines had been "zeroed out" and that he did not have to return to custody (Dkt. No. 29-1, at 2).

At the time of the incident, Dwight Duch, a lieutenant with the Forrest City Police Department, was the acting supervisor of Forrest City Animal Control (Dkt. No. 29-4, at 2). After the incident, Lt. Duch issued a memo to Mr. Williams instructing him to stop using the pistol and to turn it into Lt. Duch as soon as possible (Dkt. No. 29-8).  Lt. Duch issued a written incident report and an interoffice memorandum to Chief Reynolds regarding the incident (Dkt. Nos. 29-6, 29-7).  Lt. Duch stated in his memorandum that, to the best of his knowledge, the Forrest City Humane Society owned the tranquilizer pistol that injured Mr. Hicks (Dkt. No. 29-6).  Lt. Duch reported, "An inspection of the tranquilizer gun (pistol srn: PP5711) indicated that the safety mechanism is not functioning properly.  I have provided a purchase order to replace the tranquilizer gun with a tranquilizer rifle.  Forrest City Animal Control is in possession of one tranquilizer delivery system which is a CO2 Rifle that ACO Gaines handles" (Dkt. No. 29-6). Lt. Duch noted that "[b]oth ACO Gaines and ACO Williams have been trained by a veterinarian on the use of the drugs in the delivery system.  Both have completed the Police officer Part Time II course receiving weapon use and safety instructions" (Dkt. No. 29-6).  Lt. Duch reported that he did not find Mr. Williams in violation of any policy or procedure but stated "good weapon safety practice is in question.  I have verbally instructed him on this issue and issued a written directive to prevent a repeat of this incident" (*Id*.).  Lt. Duch's written directive ordered that the ACOs examine the tranquilizer delivery systems and the safety mechanisms daily, that the tranquilizer delivery system be unloaded at all times while inside a vehicle and except when in use by the ACO, and that trustees not handle or load the tranquilizer delivery system (Dkt. No. 29-9).

There is conflicting testimony regarding what Lt. Duch knew about the pistol that injured Mr. Hicks prior to the incident.  Mr. Gaines testified that there were three tranquilizer guns when

he began working for Forrest City Animal Control. He said that a tranquilizer rifle and a tranquilizer pistol were kept locked at the Animal Shelter, and a second pistol was in one of the Animal Control vehicles (Dkt. No. 45, at 21-25). Mr. Gaines testified that the second pistol was "raggedy," rusty, and missing parts, and he did not believe that the pistol was operable (Dkt. No. 45, at 24, 43, 80). At some point, Mr. Williams had worked on this pistol to make it operable; it was this pistol that discharged and struck Mr. Hicks on May 11, 2012 (Dkt. No. 45, at 44).

Mr. Hicks said that he observed Mr. Williams with this tranquilizer pistol prior to the incident; it had electrical tape around it and a zip tie on the barrel. Mr. Williams told the trustees he had pieced the pistol together from two non-operable tranquilizer pistols (Dkt. No. 29-1, at 8, 15). In addition, Mr. Hicks said that Mr. Williams told the trustees the pistol did not have a safety mechanism (Dkt. No. 29-1, at 14).

Lt. Duch testified that the City had only one tranquilizer gun, a rifle. Lt. Duch said Mr. Gaines mostly had the rifle, but that Mr. Gaines and Mr. Williams were to share the rifle because they had different days off (Dkt. No. 29-4). He explained that he was aware of one other pistol that was owned by the Forrest City Humane Society and kept locked up with the City's tranquilizer rifle. He said he specifically instructed Mr. Gaines and Mr. Williams not to use the Humane Society's tranquilizer pistol. He said he had purchased the tranquilizer rifle for the City specifically because the pistol he was aware of belonged to the Humane Society (Dkt. No. 29-4, at 5, 7). Lt. Duch testified that he never knew of the existence of the second tranquilizer pistol that was in Mr. Williams's possession until after Mr. Hicks's incident (Dkt. No. 29-4, at 4). Lt. Duch testified that he first learned there were two different pistols when Mr. Gaines turned in a pistol with his equipment at the time his employment terminated, sometime after May 11, 2012 (Dkt. No. 29-4, at 7-8).

Lt. Duch testified that Mr. Gaines never informed him about any safety concerns with regard to the pistol that ultimately injured Mr. Hicks (Dkt. No. 29-4, at 4). Lt. Duch testified that the only concerns Mr. Gaines ever voiced were in regard to a gas leak with the City's tranquilizer rifle, which Lt. Duch subsequently inspected and took to a gunsmith to be repaired. Lt. Duch said the rifle was not functioning properly, but that the safety on the rifle was fine (Dkt. No. 29-4, at 4).

Mr. Gaines's testimony regarding his conversations with Lt. Duch is unclear. He testified he did not know whether Lt. Duch knew about the second, broken pistol. He said he never brought this pistol to Lt. Duch's attention, although he had a conversation with Lt. Duch on October 6, 2011, to ask him to purchase tranquilizer darts (Dkt. No. 45, at 25). Mr. Gaines later testified that he made complaints to Lt. Duch regarding the pistol that injured Mr. Hicks, but he referred to his October 6, 2011, request for Lt. Duch to order darts (Dkt. No. 45, at 46-47). Mr. Gaines then said that his conversation on October 6, 2011, was about ordering darts and training to use a tranquilizer gun. He said that he spoke to Lt. Duch about ordering darts and training because he felt the tranquilizer gun would help him avoid dog attacks but he had never used a tranquilizer gun before (Dkt. No. 45, at 81-82). Mr. Gaines said that Lt. Duch told him to "be patient" (*Id*.).

Mr. Gaines also said that he had concerns at the time of October 6, 2011, that one of the guns was in the truck while inmates were working with Animal Control (Dkt. No. 45, at 47). He explained that he was concerned that inmates could pull the tranquilizer gun on an ACO and that there was no "antidote" for the tranquilizer darts (*Id*. at 48-49). Mr. Gaines claimed that he conveyed his concern to Lt. Duch that there was no antidote and that Lt. Duch told him to "be careful" (Dkt. No. 45, at 48-51). At another point, Mr. Gaines said that his concern with the

pistol was his belief that it would be safer to use holsters, so that the tranquilizer pistol would remain on his side when getting out of the truck with an inmate still in the vehicle (Dkt. No. 45, at 66-67). Mr. Gaines said that Lt. Duch rejected this idea. Mr. Gaines also testified that he had expressed concerns to Lt. Duch regarding Mr. Williams, who he felt was incompetent and careless (Dkt. No. 45, at 69-71).

Mr. Hicks has also produced an affidavit from Mr. Gaines that states that he informed Lt. Duch on three separate occasions regarding the condition of the tranquilizer gun (Dkt. No. 45, at 5). Mr. Gaines in his affidavit states that the gun was missing several pieces and that the safety device was not working properly. He states he kept complaining about the safety and condition of the gun, but Lt. Duch told him he would "get fired before anything happens" (*Id*.). Mr. Gaines's affidavit also states that he was not properly trained on how to use the tranquilizer gun (Dkt. No. 45, at 6).

Mr. Gaines testified that he conveyed several of his concerns to members of the City Council and Mayor Bryant. He claims he spoke with Alderman Henry Peacock regarding his proposal for a holster for using a tranquilizer pistol and that he spoke with Mr. Peacock and another city councilman, Mr. Twillie, regarding his concerns "about the authority and training of us out there . . . with the weapon and no training, and lawsuits that could follow it" (Dkt. No. 45, at 51-52, 65). Mr. Gaines said that he voiced concerns to Mayor Bryant that Mr. Williams "wasn't the right man for the job" (Dkt. No. 45, at 71). Mr. Gaines said that Mayor Bryant instructed him to voice his concerns to Lt. Duch.

Mr. Gaines testified that no employees of St. Francis County ever rode in the vehicle with him after he picked up trustees from the jail. He said that he never voiced any of his safety concerns to any county employees (Dkt. No. 45, at 95-96).

## II.      Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to establish there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex*, 477 U.S. at 331.

## III.      Analysis

"To state a claim under [§ 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011). Mr. Hicks in his complaint claims that defendants acted under color of state law and deprived him of his Fourth, Fifth, and Fourteenth Amendment rights. Both the City Defendants and County Defendants assert qualified immunity and that Mr. Hicks has failed to show any violation of his

constitutional rights.  The Court first considers Mr. Hicks's individual-capacity claims against Lt. Duch, Mayor Bryant, and Sheriff May.

### A.      Individual-Capacity Claims and Qualified Immunity

Qualified immunity involves the following two-step inquiry:  (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct.  *Mitchell v. Shearrer*, No. 12-1931, 2013 WL 4793107, at *3 (8th Cir. Sept. 10, 2013); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first).  Therefore, the Court first considers whether Mr. Hicks has established an alleged violation of a constitutional right, viewing all facts in his favor.

Mr. Hicks claims in his complaint that his Fourth, Fifth, and Fourteenth Amendment rights were violated.  Mr. Hicks does not cite the Eighth Amendment in his complaint, although he claims an Eighth Amendment violation in his briefing.  Regardless of how he styles his claims in his complaint, the Court finds that Mr. Hicks's claims are properly analyzed under the Eighth Amendment's standard of deliberate indifference.

First, Mr. Hicks cannot show that he was seized within the meaning of the Fourth Amendment through the accidental use of force.  To constitute a Fourth Amendment seizure, an application of physical force "must be willful" because "the word 'seizure' . . . can hardly be applied to an unknowing act."  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1208 (8th Cir. 2013) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)).  "A Fourth Amendment seizure requires an intentional act by an officer, and does not address 'accidental effects of otherwise lawful government conduct.'"  *McCoy v. City of Monticello*, 411 F.3d 920,

922 (8th Cir. 2005) (quoting *Brower*, 489 U.S. at 596-97)).  Mr. Hicks does not claim, and the evidence does not suggest, that Mr. Williams willfully or intentionally shot him with the tranquilizer gun.  Mr. Hicks was struck through accidental discharge.  In an analogous situation, the Eighth Circuit has recognized that bystanders are not seized for Fourth Amendment purposes when struck by an errant bullet in a shootout.  *Moore v. Indehar*, 514 F.3d 756, 760 (8th Cir. 2008) (collecting cases from the First, Second, Fourth, Sixth, and Tenth Circuits).  Furthermore, even if he was seized within the meaning of the Fourth Amendment, the Supreme Court is clear that, where the seizure is of a prisoner, an excessive force claim is properly analyzed under the Eighth Amendment.  *See Graham v. Conner*, 490 U.S. 386, 394-95 (1989); *Whitley v. Albers*, 475 U.S. 312, 318-26 (1986).

As to Mr. Hicks's Fifth and Fourteenth Amendment claims, the Court cannot discern any possible claim under these amendments other than a substantive due process claim.  As this case does not involve federal actors, Mr. Hicks can only state a due process claim under the Fourteenth Amendment.  To the extent Mr. Hicks has stated a substantive due process claim under the Fourteenth Amendment, the Court notes it is clear that, in the prisoner-safety context, "the Due Process Clause affords [Mr. Hicks] no greater protection than the Cruel and Unusual Punishments Clause [of the Eighth Amendment]."  *Whitley*, 475 U.S. at 327.  Furthermore, the United States Supreme Court "has always been reluctant to expand the concept of substantive due process" and has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal quotations and citation omitted).  Because the Eighth Amendment serves as the primary source

of substantive protection to prisoners, Mr. Hicks's claims should be analyzed under the Eighth Amendment and not under substantive due process. *Id.*; *Whitley*, 475 U.S. at 327; *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). City Defendants contend that the Court should limit Mr. Hicks to the claims he pleaded in his complaint. However, they agree that Mr. Hicks's claims are more properly analyzed under the Eighth Amendment given Mr. Hicks's status as an inmate at the time of the incident (Dkt. No. 30, at 7). Therefore, the Court will analyze Mr. Hicks's claims under the Eighth Amendment's deliberate indifference standard.

To succeed on an Eighth Amendment claim, the prisoner must first prove that the conditions challenged were "objectively, 'sufficiently serious.'" *Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Secondly, the prisoner must show that the prison official acted with a "sufficiently culpable state of mind." *Id.* (internal quotations omitted). "[U]nder this subjective component, the prisoner must prove that a prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Id.*; *Farmer*, 511 U.S. at 842. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In defining "deliberate indifference," the Eighth Circuit has stated that it is clear that "mere negligence or inadvertence is insufficient to satisfy this standard." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993); *see Wilson v. Seiter*, 501 U.S. 294, 305 (1991); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Thus, whatever its exact contours, deliberate indifference requires a highly culpable state of mind approaching actual intent." *Choate*, 7 F.3d at 1374. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

"Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*. at 835.

"Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). A supervisor can be liable for a subordinate's misconduct only if "he directly participated in the constitutional violation . . . or if his failure to train or supervise the offending actor caused the deprivation." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 806-07 (8th Cir. 1994) (citations omitted). A claim based on failure to supervise requires a showing that the supervisor: "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) Failed to take sufficient remedial action; and (4) That such failure proximately caused injury to [plaintiff]." *Otey*, 121 F.3d at 1155. Additionally, a supervisor may be held liable if she created a policy or custom under which the unconstitutional practice occurred. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

### 1.      *Claims Against Lt. Duch*

Mr. Hicks claims that Lt. Duch showed "deliberate" or "reckless indifference to the health, life, and safety of the Plaintiff" because he knew or should have known that the safety device on the City's tranquilizer gun was not working properly and failed to take any steps to protect the life and safety of Mr. Hicks (Dkt. No. 1, ¶¶ 16, 21). Mr. Hicks further claims punitive damages are warranted against Lt. Duch based on the allegation that Mr. Williams informed Lt. Duch about the dangerous condition of the tranquilizer gun and its safety device, but Lt. Duch "failed and refused to take any reasonable steps to protect the life and safety of the Plaintiff . . . ." (*Id*., ¶¶ 35-37). Lastly, Mr. Hicks's claims in his briefing that Lt. Duch "did

nothing to make the work environment safe, or nothing to stop Mr. Williams from riding with this dangerous weapon within the City's work vehicle" (Dkt. No. 40, at 9).

Although Mr. Hicks's complaint states that Mr. Williams informed Lt. Duch about the condition of the tranquilizer gun, Mr. Hicks only offers the testimony of Mr. Gaines.  Mr. Gaines's affidavit states that he informed Lt. Duch on three separate occasions regarding the dangerous condition of the tranquilizer pistol, including the safety device (Dkt. No. 45, at 5). The Court notes that Mr. Hicks's evidence on this point is bare, as Mr. Gaines's affidavit is contradicted by his previous deposition testimony that he did not know whether Lt. Duch was aware of this pistol's existence, that he never brought this particular pistol to Lt. Duch's attention, and that he did not know whether the safety device was malfunctioning on the pistol (Dkt. No. 45, at 25, 45, 87).  While the Court is not to weigh the credibility of Mr. Gaines's testimony, the Court questions what reasonable and justifiable inferences it can base off Mr. Gaines's contradictory and equivocal testimony.  However, even accepting as true that Mr. Gaines voiced concerns to Lt. Duch regarding the condition of the pistol and its safety device, this would not suffice to show deliberate indifference.  Eighth Circuit precedent dictates that Mr. Hicks's allegations and evidence fail as a matter of law as mere allegations of negligence.

In *Choate*, where a prisoner was injured from slipping off a roof due to saw dust making the roof slick, the court held that the immediate supervisors of the project did not have a sufficiently culpable state of mind for "failing to erect toe boards on the roof or require inmates to wear rubber-soled shoes . . . despite one complaint about slickness . . . ."  7 F.3d at 1375-76. The court stated that "although the garage [roof] here was perhaps not a model of workplace safety, the various safety deficiencies that the district court cited do not establish that [defendants] acted with deliberate indifference."  *Id*. at 1375.

In *Warren v. Missouri*, 995 F.2d 130 (8th Cir. 1993), a prisoner working on an industrial table saw was injured from a board being "kicked back" by the saw.  The court found that the allegations that the immediate supervisor failed to equip the saw with "anti-kickback fingers," despite knowledge of similar prior injuries, fell "far short of creating a genuine issue of deliberate indifference to a serious issue of work place safety."  *Id*. at 131.

Likewise, in *Stephens*, the Eighth Circuit found no Eighth Amendment violation for a prison official's failure to provide proper safety gear to inmates working in a warehouse even assuming the official was aware of safety problems at the warehouse.  *Id.*, 83 F.3d at 201 ("Simply failing to provide inmates who move furniture with steel-toed boots, protective eyewear, and hard hats, for example, does not establish a constitutional violation any more than failing to install a safety device on a saw despite knowledge of prior injuries.") (citing *Warren*, 995 F.2d at 131).  The court held that such evidence at most established negligence in not taking greater safety precautions, which is not enough to establish a constitutional violation.  *Id.*

As in the above cases, Mr. Hicks essentially complains of negligence in failing to take greater safety precautions with the tranquilizer gun.  This falls far short of establishing a sufficiently culpable state of mind.  Even if Forrest City Animal Control "was perhaps not a model of workplace safety," the safety deficiencies cited by Mr. Hicks are only probative of negligence.  *Stephens*, 83 F.3d at 201.  As a matter of law, this cannot establish deliberate indifference, even if Lt. Duch was told of these safety concerns.  *Warren*, 995 F.2d at 131; *Choate*, 7 F.3d at 1375-76.

To the extent Mr. Hicks's complaint could be construed to raise separate claims for failure to supervise or failure to train, these claims would also fail.  Mr. Hicks has not presented sufficient evidence to create a genuine issue of fact that Lt. Duch had notice of "a pattern of

unconstitutional acts committed by subordinates," and for the reasons discussed above, he has not shown the requisite culpability. *Otey*, 121 F.3d at 1155. Furthermore, Mr. Hicks offers no evidence that any alleged failure to train or supervise caused his injuries. The only evidence Mr. Hicks offers on this point is Mr. Gaines's testimony that neither he nor Mr. Williams were properly trained to use the tranquilizer gun. However, this is merely Mr. Gaines's opinion, which is contradicted by the evidence, including his own testimony. The record shows that Mr. Gaines and Mr. Williams were trained on the general use of the tranquilizer darts by a veterinarian (Dkt. No. 29-7). Moreover, at the time of Mr. Hicks's injuries, Mr. Williams and Mr. Gaines had completed 100 hours of police training with the Forrest City Police Department Reserves, which included firearm safety (*Id.*; Dkt. No. 29-4, at 2; Dkt. No. 45, at 77). Mr. Gaines's subjective assessment of this training notwithstanding, Mr. Hicks has simply not offered any evidence to create a genuine issue of fact from which a reasonable jury could conclude that this accident resulted from a lack of training.

To the extent Mr. Hicks claims that City officials failed to train *him*, the Court notes that Mr. Hicks was not using the tranquilizer pistol and his injury was in no way dependent upon whether or not he was trained to use the tranquilizer pistol. Mr. Hicks even testified that he had no claim for a failure to train him to use the tranquilizer gun because he was strictly instructed not to use the tranquilizer gun (Dkt. No. 29-1, at 6).

Mr. Hicks's claim for punitive damages against Lt. Duch also fails. Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Punitive damages punish a defendant for

outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future." *Id.* at 922-23.  It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others.  *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997).  Because Mr. Hicks has failed to create a genuine issue of material fact that Lt. Duch acted with deliberate indifference or violated Mr. Hicks's constitutional rights, his claim for punitive damages also fails.

Viewing the evidence in the light most favorable to Mr. Hicks and drawing all justifiable inferences in his favor, the Court finds that Mr. Hicks has not created a genuine issue of material fact on his claims against Lt. Duch.

### 2.    *Mayor Bryant*

The only allegations in Mr. Hicks's complaint specific to Mayor Bryant appear to be official-capacity claims relating to the City's policy of allowing inmates to work off costs and fines as employees with the City (Dkt. No. 1, ¶¶ 5-6).  Mr. Hicks alleges in his briefing, however, that his Eighth Amendment Rights were violated by both Lt. Duch and Mayor Bryant "when they knowingly allowed him to work in a dangerous environment and he sustained a violent injury [from] a tranquilizer gun [that] both Defendants knew [or] should have known would cause harm Plaintiff injury [sic]" (Dkt. No. 40, at 6).

Mr. Hicks's allegations and evidence are not sufficient to show that Mayor Bryant was deliberately indifferent to a substantial risk of serious harm.  Mr. Hicks's only evidence on this claim is Mr. Gaines's testimony that he voiced concerns to Mayor Bryant, and the only specific concern he identified was that Mr. Williams "was not the right man for the job" (Dkt. No. 45, at 64).  This falls far short of showing that Mayor Bryant had subjective knowledge of a substantial risk of serious harm.  Moreover, even if this qualified to show subjective awareness of a

substantial risk to inmate health and safety, Mayor Bryant responded reasonably and, therefore, did not show deliberate indifference.   Mr. Gaines testified that when he voiced concerns to Mayor Bryant, Mayor Bryant instructed him to address all concerns regarding animal control to Lt. Duch (Dkt. No. 45, at 64).   It can hardly be said that instructing Mr. Gaines to address his concerns with animal control to the supervisor of Forrest City Animal Control was unreasonable. *Farmer*, 511 U.S. at 835.   Mr. Hicks has failed to create a genuine issue of material fact with respect to his individual-capacity claims against Mayor Bryant.

### 3.   *Sheriff May*

Mr. Hicks offers no cogent argument and no evidence that Sheriff May, a county official, had any involvement in the operation of Forrest City Animal Control or had any knowledge of any risk presented by the City's use of tranquilizer guns.   Mr. Hicks's allegations against Sheriff May are essentially that he knew of and condoned the work-release program and, therefore, knew or should have known about the unsafe condition of the tranquilizer gun (Dkt. No. 43, at 9, 12-13).   Rather than pointing to any specific evidence, Mr. Hicks argues that "there is no testimony from the record from Sheriff Bobby May that he was not informed regarding the danger" (Dkt. No. 43, at 4).   This is not sufficient to establish personal involvement in the alleged violation or the requisite culpability on the part of Sheriff May.

Giving Mr. Hicks the benefit of all reasonable factual inferences to be drawn from the allegations in his complaint and facts in the summary judgment record, the Court determines that defendants are entitled to summary judgment on Mr. Hicks's claims against Lt. Duch, Mayor Bryant, and Sheriff May.   Lt. Duch, Mayor Bryant, and Sheriff May are entitled to qualified immunity and to summary judgment on Mr. Hicks's claims against them in their individual capacities.

### B.      Official-Capacity Claims and Municipal Liability

An official-capacity suit is the equivalent of a suit against the governmental entity of which the individual is an agent and imposes liability on the entity which the individual represents.  A "proper analysis" of municipal liability "requires [the separation of] two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a theory of *respondeat superior.  Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996).  Claims against a municipality require proof of an official policy or custom as the cause of the constitutional deprivation.  A plaintiff must include allegations, references, or language by which one could infer the conduct alleged resulted from an unconstitutional policy or custom. *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of Northfolk*, 430 F.3d 605, 614 (8th Cir. 2003)).

Defendants are entitled to judgment as a matter of law on Mr. Hicks's official-capacity claims and his claims against Forrest City and St. Francis County.  As an initial matter, the Court has found no constitutional violations, and, therefore, the governmental entities cannot be held liable.  *See Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 1998) (quoting *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994) ("The City cannot be liable whether on a failure to train theory or a municipal custom or policy theory, unless [an individual defendant] is found liable on the underlying substantive claim.")).

Even if there were constitutional violations, Mr. Hicks has failed to create a genuine issue of material fact with respect to the official-capacity defendants' alleged liability for the acts of

the individual defendants.  *Respondeat superior* is not a permissible theory for holding a governmental entity liable for the unconstitutional acts of its employees.  *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).  Instead, the governmental entity is liable under § 1983 when "a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" can be causally related to the allegedly unconstitutional conduct of its employees.  *Id.*  To be causally related, the policy or practice must be the "moving force" behind the alleged constitutional violation.  *Id.* at 694.  Liability may be based on "constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels."  *Id.* at 690–91.  *See also Ware v. Jackson Cnty., Mo.*, 150 F.3d 873 (8th Cir. 1998) (examining the requirements to establish official policy and to establish custom or usage).  "[I]naction or laxness can constitute government custom if it is permanent and well settled."  *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994) (citation omitted).  "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of [alleged] misconduct and deliberately failed to take remedial action."  *Andrews*, 98 F.3d at 1075 (citations omitted).  A governmental body may also be held accountable based on a failure to train or supervise adequately under certain circumstances.  *City of Canton v. Harris*, 489 U.S. 378 (1989) (summarizing the circumstances under which liability for hiring and training practices may attach under § 1983).

Here, Mr. Hicks has identified no policy, practice, or custom causally related to the allegedly unconstitutional conduct.  Mr. Hicks's complaint alleges that both Forrest City and St. Francis County failed to train properly him or the other trustees on how to operate safely a tranquilizer gun (Dkt. No. 1, ¶¶ 10-11).  However, as Mr. Hicks even testified, he has no claim

for a failure to train him or the trustees to use the tranquilizer pistol, as neither Forrest City nor St. Francis County had any reason to train trustees to use the tranquilizer pistol (Dkt. No. 29-1, at 6,11).  Mr. Hicks also claims that Forrest City's and St. Francis County's policy and practice of allowing inmates to work as trustees placed him in a "dangerous and harmful work environment" and "showed a reckless disregard to the life and safety of the Plaintiff and other similar[ly] situated citizens" of the City and County (Dkt. No. 1, ¶¶ 10-11).  Mr. Hicks offers no argument or evidence to show notice that the City's or County's policy or practice of allowing inmates to work off fines was somehow deficient.  He simply relies on his underlying claims against Mayor Bryant and Lt. Duch.  Even if he had stated viable claims against Mayor Bryant or Lt. Duch, a municipality is not liable on a theory of *respondeat superior* or vicarious liability.  *Andrews*, 98 F.3d at 1074.  In addition, Mr. Hicks has offered no argument or evidence from which a reasonable jury could conclude that the policy or practice of allowing inmates to work voluntarily for the City to reduce fines was the "moving force" behind the alleged constitutional violation.  *Monell*, 436 U.S. at 694.

Mr. Hicks also claims punitive damages against Forrest City.  Even if Mr. Hicks could establish a constitutional violation, Forrest City is immune from punitive damages under § 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (a municipality is immune from punitive damages under § 1983); *Fields v. City of Omaha*, 810 F.2d 830, 835 (8th Cir. 1987).

Giving Mr. Hicks the benefit of all reasonable factual inferences to be drawn from the allegations in his complaint and the facts in the summary judgment record, the Court finds that defendants are entitled to summary judgment on Mr. Hicks's official-capacity claims and claims against Forrest City and St. Francis County.  Because the Court has found no constitutional

violations, the Court declines to address arguments made regarding the purported release executed by Mr. Hicks.

*        *        *

For these reasons, defendants' motions for summary judgment are granted (Dkt. No. 26, 29).  Mr. Hicks's complaint is dismissed with prejudice.

SO ORDERED this the 20th day of September, 2013.

_____
Kristine G. Baker
United States District Judge